**INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, et al.,**
Appellants,

v.

**Homer C. PIERCE et al., Appellees.**

No. 6253.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 5, 1959.

Rehearing Denied Feb. 25, 1959.

Dixie & Schulman, Houston, Mullinax, Wells & Morris, Dallas, for appellants.

Warner F. Brock, Houston, for appellees.

PER CURIAM.

This appeal is by the International Union of Operating Engineers, AFL–CIO, an unincorporated association, Joseph J. Delaney, its General President, H. A. Reinhard and A. J. Flowers, appellants, from an order of the District Court of Jasper County, Texas, granting a temporary injunction restraining the International Union and its president from invoking supervision over its Local 450. The action was commenced by appellees Homer C. Pierce, Charles Hart and J. Don Sullivan in their behalf as officers of said Local and for the membership of this Local. It was alleged by them that the order of the General President, Joseph J. Delaney, dated April 22, 1958, establishing supervision over Local 450 was made under Art. VI, Sec. 3 of the Constitution of the Union, and therefore denied to them and to the Local due process of law. Their petition alleged, among other things, that the defendants did not have just cause to place Local 450 under their supervision, and that the defendants had abused their discretion in doing so. Further, that the plaintiffs have no adequate union remedy and that plaintiffs' said Local would suffer irreparable injury should said order be put into effect.

Appellants, as defendants, filed in answer to said petition several special pleas not necessary here to detail, and by verified answer asserted that the order of supervision was made under and by authority of the Constitution of the International; and that this was done as a last resort and only after many hearings involving various contractors and Local 450 were had; that the Constitution and by-laws of International constitute a contract between all parties involved and is binding upon them as such. They further alleged that good cause, and indeed imperative public necessity, support the supervision order because appellees had engaged in a long series of strikes, work stoppages, violations of numerous no-strike contracts and other irregularities.

The facts show that for some period of time during 1956 and 1957 that there had been friction between the Local, which operates in and includes 94 counties in the southeastern part of Texas, and several contractors in the area; that work stoppages and strikes had been called by the Local on several occasions which caused considerable loss of man hours work and damage to contractors. The contractors complained about the actions of the Local to the International Union headquarters and the General Executive Board of the

Union, (composed of the General President, Joseph J. Delaney, 10 Vice Presidents and the General Secretary-Treasurer) and that the Board in June, 1957, appointed a two-man committee who were Paul A. Larson, a Vice President of International and Administrative Assistant to the General President, and William J. Stuhr, Vice President of International, to investigate the conditions in the area involved and recommend a solution. This committee first came to Houston, headquarters of the Local, and spent several days discussing the problems involved with the officers of the Local, then went to Chicago where matters were discussed with representatives of the contractors. The committee returned to Houston and conducted hearings with both representatives of the Local and the contractors at the Shamrock Hotel and thereafter prepared their report and recommendations to the General Executive Board. The recommendations of this committee, which were approved and adopted by the General Executive Board, are referred to in the briefs of the parties as the "ground rules" and are as follows:

"1. That spontaneous work stoppages—or threats of work stoppages—by strike, picketing, walk-outs and failure of the Operating Engineers to report for work be discontinued.

"2. When issues arise the Committee recommends that Local Union 450 cooperate to the fullest extent to resolve the issues on an amicable basis. When such issues cannot be resolved amicable on a local level—before *any* economic action is taken —Local Union No. 450 is instructed to call upon the International Union Headquarters' Office for assistance.

"3. The Contractors will arrange to have similar assistance through their respective Groups or Associations for any of their Contractors involved in said dispute and to whom Local Union No. 450 and the International Office can refer.

"4. Where disagreements arise over the application of the Local Union's Agreements it is the recommendation of this Committee that Local Union No. 450 be directed to avoid abuses or what may seem to be abuses in the manning of small equipment and/or demands not clearly provided for in their Contract Agreement.

"5. That every sincere effort be made on the part of both the Representatives of Labor and Management to work together for peaceful cooperation in expanding the industry. Only by doing so can we both grow into the future. To do otherwise, will ultimately prove most harmful to all concerned.

"6. That the Members of this Committee will continue to be available for counsel and guidance."

Written approval of these ground rules were given November 8, 1957 by the International Union, the Employers Association Representatives and the Employers' Council but Local 450 did not join in this. However, plaintiff Homer C. Pierce, Business Manager for the Local, in effect, expressed his approval of these rules in a letter which he wrote to the then General President, William E. Maloney. The letter appears to be cooperative and appreciative of the help and influence of the International Union and of the two-man committee. The following excerpts are quoted from that letter:

" * * * I agree with the Committee's recommendation that spontaneous work stoppages—or threats of work stoppages— by strike, picketing, walk-outs and failure to report for work, should be discontinued. On this point, I would like to advise that in many instances I have used due diligence to prevent unauthorized work stoppages. * * *

"In regard to recommendation No. 2 of the Committee, please be advised that Local Union 450 shall cooperate to the fullest extent to resolve all disputes on an amicable basis. We also are happy to have your cooperation in helping to adjust these issues on a national level if they cannot be

resolved amicably on a local level. I assume that where the issue involves one of flagrant contract violation or any other bona fide labor dispute, that the final decision to take economic action will remain in the membership of Local Union 450 in the future as it always has in the past. Please advise if this assumption is correct."

The question raised by plaintiff Pierce's letter was not answered, at least in writing by the International Union. After the ground rules were established it appears that some four or more strikes or work stoppages occurred without approval of the International. The General Executive Board at a meeting a short time previous to April 22, 1958, according to Mr. Larson's testimony, did not make a recommendation as to any specific action for the General President to take, but he stated that they directed the General President, with the responsibility of his office, to do something in the Local Union 450 area. The minutes of the meeting of the General Executive Board on this occasion were not available for use in evidence. Thereafter and on April 22, 1958 the General President, Mr. Joseph J. Delaney, made the order invoking supervision of Local 450. (This order is long and for brevity's sake is copied in the appendix to this opinion.)

Plaintiffs' suit for injunction was to keep this order of the General President from being placed into effect.

The sections of the Constitution of International Union of Operating Engineers pertinent to this case are copied in the appendix.

The trial court heard two weeks of evidence and at the conclusion of the trial made certain findings as part of his order granting the injunction. We quote the following from his findings:

"First, the defendants did wrongfully and unlawfully without charges, notice, and a hearing prior to the time such action was taken serve a letter or order of supervision upon plaintiffs * * * placing or attempting to place plaintiffs' Local 450 under supervision or trusteeship of the defendants, and by the same means defendants wrongfully and unlawfully converted or attempted to so convert to defendants' own use all of the real and personal property and assets of Local 450, and at the time and by the use of the same wrongful and unlawful means and by force, threats and coercion, defendants removed or attempted to remove plaintiffs Homer C. Pierce, Charles Hart and J. Don Sullivan from the offices of duly elected officials of Local 450 and thereby committing a wrongful and unlawful interference with the property rights of Local 450, its members and other plaintiffs, including the right to work and make a living under a local autonomous, democratic organization in a manner provided by plaintiffs. And by the same means and at the same time threatening the plaintiff J. Don Sullivan with the loss of his 'Union' book for failure to immediately turn over to defendants the books and records of Local 450.

"Second, that the General President's order of supervision was served and imposed upon plaintiffs without prior charges that Local 450 would be placed under this supervision by reason of certain and specific acts and omissions, notice and hearing thereby wrongfully and unlawfully denying due process of law to the plaintiffs. * * *

"Sixth, that immediate and irreparable injury, damage and harm will be sustained by plaintiffs and other members of Local 450 similarly situated unless the temporary injunction is granted."

■ We approve the trial court's findings above quoted.

■ It is a general rule that courts will not interfere with the internal affairs of unincorporated associations such as fraternal orders and trade unions, and the constitution and by-laws of such organizations are considered contracts between the members thereof and between the members and the organization and will be upheld

where same are applied and administered in good faith and upon probable cause by those designated in such regulations to act. International Longshoremen's Ass'n v. Graham, Tex.Civ.App., 175 S.W.2d 255. However, where such constitution or by-laws in any respect violate public policy or the law of the land, they must give way thereto. "Due process" is uniformly held to be a part of the "Law of the land". Many cases, both from the appellate courts in Texas and from other states of the Union, have laid down the proposition that before either a member of a trade organization may be suspended or expelled or a subordinate body of the parent organization may be suspended or its charter revoked, charges must be brought, notice and hearing thereon given the accused member or the accused subordinate body. This is so for the reason that property rights are involved and before they can be taken away "due process" must be accorded the accused.

United Brotherhood of Carpenters & Joiners of America v. Carpenters' Local Union No. 14, etc., Tex.Civ.App., 178 S.W. 2d 558, 564, is a case involving the suspension of a local for failure to abide by a ruling of the General President of the United Brotherhood. There certain members of the Local had been suspended or expelled and the General President instructed the Local to reinstate these members and after considerable correspondence the General President wrote a letter to the Local stating that if the majority of the membership "does not vote in favor of concurring with instructions issued then you are to notify them that the Local Union is suspended, and you are to take charge of the charter, books, papers, etc., of the Local Union." The Local refused to concur in these instructions. Both the parent organization and the Local filed cross suits, each seeking relief, the parent organization desiring to have the General President's order obeyed and the Local seeking an injunction restraining enforcement of the suspension order on the ground that no charges had

been filed against the Local nor a hearing accorded. The power of the General President in that case is similar to that of the General President in the instant case. On motion for rehearing, in passing upon the question of "due process" or need for prior charges and hearing before action is taken, the court said:

"The general American rule is that when the constitution or laws of an unincorporated association provide for the suspension or revocation of the charter of a subordinate body (or the suspension or expulsion of a member), but do not provide for charges, notice and hearing relative to such action, the courts will recognize as valid only such actions taken under the association's laws as are taken in pursuance of charges made, notice given and hearing had. Taboada v. Sociedad Espanola De Beneficencia Mutua, 191 Cal. 187, 215 P. 673, 27 A.L.R. 1508; 10 C.J.S. Beneficial Associations § 52, p. 295; 63 C.J. 698, [87 C.J.S. Trade Unions § 45]. This rule may be stated by saying that the law writes into the constitutional or by-law provisions of the association relating to the suspension or revocation of a charter, the requirement that such suspension or revocation must be effected by 'due process of law,' that is, upon charges, notice and hearing."

In addition to the California case cited in the above quotation the court also cites and relies upon the California case of Ellis v. American Federation of Labor, 48 Cal. App.2d 440, 120 P.2d 79. After discussion of this last California case, the court in the Brotherhood case stated, "We have concluded that the California case should be followed. Consistency in decision of the American authorities upon the point is desirable."

The Brotherhood case was cited with approval by our Supreme Court in International Printing Pressmen, etc. v. Smith, 145 Tex. 399, 198. S.W.2d 729, 733, upon the point involved here. In addition the majority opinion of the Court of Civil Appeals at El Paso, in the later case of Musi-

cians Protective Ass'n v. Semon, Tex.Civ. App., 254 S.W.2d 211, 213, cited the Brotherhood case with approval. There an alien was allowed to become a member with the understanding that he would complete his citizenship papers as soon as possible. Under the rules of the Musicians' Union, if he failed to so complete his naturalization as required, this would be ground for annulling his membership. The alien later allowed his application for citizenship to be dismissed and the Local to which he belonged, without charge and notice, canceled his membership and he brought this action for damages for expulsion without charge and notice to be heard. The majority opinion (C. J. Price dissenting) in part reads:

"As has already been noted the defendant Association gave no notice to the plaintiff of the intention to proceed against him for failure to perfect his citizenship, but the action was taken summarily. It seems to be the rule everywhere, though the by-laws as in the instant case do not provide for the giving of notice, that such is essential and reasonable notice must be given, and a failure to do so will constitute the action wrongful and unlawful, and will give rise to a cause of action for damages."

The Supreme Court of Texas refused a writ in the Musicians case and thus put its approval upon the majority opinion therein.

In addition to the Texas cases above mentioned which have followed the United Brotherhood case, courts from other states have relied upon its holding on the question discussed. The first, Mursener v. Forte, 186 or 253, 205 P.2d 568, 574, says: "The International under its Constitution and By-Laws did not have the right to usurp the functions of Local No. 72 and to exercise dominion and control over these trust funds without giving the subordinate lodge notice and an opportunity to be heard on charges filed against it. We are not un-

mindful that Art. IV, § 1, of the Constitution and By-Laws of the International provides that the President 'shall have the direction and supervision of all Subordinate and District Lodges, with power to suspend their individual members or Lodges, when in his judgment it is for the best interest of our International Brotherhood.' In our opinion it is not contemplated by the above provision that the President is authorized arbitrarily or capriciously to 'suspend a lodge' and thereby interfere with or jeopardize the interest of members who are beneficiaries of such trust funds. To hold otherwise would amount to a taking of property without due process." In that case the lower California Court had appointed a receiver for the local union's assets to hold off the action of the International.

The United Brotherhood case (178 S. W.2d 558) is also cited by the Supreme Court of the State of Washington in Washington Local Lodge v. International Brotherhood, 33 Wash.2d 1, 203 P.2d 1019. This case is much like the instant one. There was considerable dissension in Local Lodge No. 104 and the International Executive Council appointed a committee to investigate and hold hearings with reference to trouble in this local. This committee held hearings and recommended that the officers of the local be removed and the affairs of the local put under international supervision. No charges were brought against the local nor its officers, nor any hearings directed to the question of whether suspension of the local should be carried out. The court there held that the suspension or supervision was invalid; that due process required prior charges, notice and trial on such charges. Among the cases cited in support of this holding are: United Brotherhood of Carpenters & Joiners v. Carpenters' Local Union No. 14, etc., Tex.Civ.App., 178 S.W.2d 558; Taboada v. Sociedad Espanola De Beneficiencia Mutua, 191 Cal. 187, 215 P. 673, 27 A.L.R. 1508; Ellis v. American Federation of Labor, 48 Cal.App.2d 440, 120 P.2d

79, as well as cases from Indiana, New Jersey, New York, Pennsylvania and Missouri.

Naylor v. Harkins, 11 N.J. 435, 94 A.2d 825, 829, was one involving the revocation of a local or division of the Brotherhood of Locomotive Engineers without notice on prior charges filed. In holding that the local or division was not accorded due process the Supreme Court cited, among other cases, Washington Local Lodge v. International Brotherhood, supra. The court in the Naylor v. Harkins case said:

"National and international unions have been recognized as important forces, for public good and have been afforded extensive powers with concomitant responsibilities. If they are to function efficiently they must have reasonable power to discipline their divisions and individual members, and courts have displayed wholesome reluctance to interfere with such internal quarrels, recognizing that they are ordinarily best dealt with in union tribunals. But in the light of modern day realities the interests of the members and divisions must be recognized as too vital for impairment without accompanying compliance with the basic requirements of fair play and due process. See Note, Procedural 'Due Process' in Union Disciplinary Proceedings, 57 Yale L.J. 1302 (1948)."

Appellants say, however, that a hearing accorded appellees "at some stage" of a proceeding, not necessarily at its beginning, satisfied "due process"; and it urges that appellees either could have appealed to the General Executive Board from the order of the General President invoking supervision, or they could have followed the method of procedure set forth in this order, and in either event they would have "had their day in court". They cite in support of their position English Freight Co. v. Knox, Tex.Civ.App., 180 S.W.2d 633 and Ewing v. Mytinger, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088, and other cases of similar import. In the former, it was held that the State Insurance Commission may tenta-

tively set rates for insurance purposes and then give the insurance companies notice and hearing thereon. We do not think this holding should control us here. In the rate case, nothing is taken from the various insurance companies so that their opportunity to make proper showing at the hearing is not hampered, but in the instant matter, the order of supervision, in and of itself, seizes and removes all property, funds, and records from the Local's officers, and the property immediately reverts under the constitution to the International, thus effectively taking away from them and the Local the financial strength to attend and make such proof on a hearing as they are able. The U. S. Supreme Court case relied upon was one involving a manufactured vitamin which the government agents had seized as having been falsely advertised, and the government thereafter promptly filed suit against the distributors of these vitamins to condemn them. The court held that the hearing in the suit accorded "due process". It was there recognized that in certain situations, speedy action is necessary to protect the public's health and safety. But we do not have that situation here. We think that our State Supreme Court by denying the writ in Musicians Protective Ass'n v. Semon, supra, has, in effect, held that a "prior" hearing and trial is a necessary requisite of "due process". In that case Semon, whose membership had been annulled by the Local, appealed within the framework of the Union to the National body. He was accorded this right of appeal and an opportunity to be heard, and on the hearing the National body upheld the Local's action. This procedure of appeal "after" the act of judgment contrary to appellant's position, was held by the court not to satisfy the requirement of "due process".

The trial court not only enjoined the International and its officers from enforcement of the supervision order, but, without any pleadings or request, enjoined appellees from causing the members of Local 450 to engage in strikes, work stoppages

or picketing without first obtaining permission from International. Since both sides agree that this unique injunction should be dissolved, it will be so done.

██ The briefs of the parties press other questions upon us based upon other findings of the trial court not set out herein, but we believe it inappropriate, at this stage of the proceedings, to undertake their solution. However, since no hearing as required under "due process" has been held the finding of the lower court that good cause did not exist as a basis for said order of supervision was premature.

From what we have said it follows that that part of the lower court's order enjoining appellees is hereby dissolved and the court's order is otherwise affirmed without prejudice to appellants or such of them as may desire to file whatever charge or charges, if any, against appellees on the question of International supervision under said Constitution and giving proper notice and hearing thereon consistent with this opinion.

Modified and affirmed.

### Appendix

### Supervision Order

April 22, 1958

To the Officers and Members of
Local Union No. 450 and Its Branches
4704 Harrisburg Boulevard
Houston 11, Texas

Order of General President
Imposing International Supervision over
Local Union 450, its branches,
Officers and Members

Dear Sirs and Brothers:

In accordance with the power and authority vested in me as General President by the Constitution of the International Union of Operating Engineers, I hereby place Local Union No. 450, its branches, officers and members, under the direct supervision of the International Union effective immediately.

To fulfill the purposes of this action, I hereby appoint, constitute and designate A. J. Flowers as my deputy and as the International's Supervisor over the affairs of Local Union No. 450, its branches, officers and members. Brother A. J. Flowers, in this capacity, shall at all times be under my direct supervision and control, and he is directed that in administering and supervising the affairs and business of Local Union No. 450 and its branches, he is to act solely for the benefit of Local Union No. 450, its branches, officers and members. Further, Brother Flowers is instructed and directed to conserve the funds and assets of Local Union No. 450 and its branches, and to permit no expenditure of funds and assets of Local Union No. 450 and its branches for any purpose other than to meet and satisfy the expenses and costs of normal operation.

Specifically, but not as a limitation upon his duties and responsibilities, Brother Flowers, as Supervisor of Local Union No. 450, its branches, officers and members, is directed to take every step necessary to restore and maintain harmony and unity within Local Union No. 450 and to remedy where necessary those situations found to exist within Local Union No. 450 which impair or defeat the lawful objectives of Local Union No. 450.

In my opinion the best interests of the International Union and Local Union No. 450, its branches and members, requires this imposition of supervision. Local Union No. 450, its branches, its officers and members, have failed to carry out their respective duties under the Ritual, obligation, laws and rules and the decisions of the International Union and its duly constituted authorities, and have deliberately and wilfully refused to observe and carry out, and have violated such Ritual, obligation, laws, rules and decisions. In addition, there presently exists within Local Union No. 450, its branches and among its officers and members, dissension and

strife which has resulted in great impairment of the best interests and welfare of that Local Union, its branches and members, and the best interests and welfare of the International Union.

Further, you are hereby notified that an early, full and complete hearing to determine whether this emergency supervision will be continued or terminated will be held before a deputy or deputies which I shall appoint. The time, date and place of such hearing will be determined within the very near future and will be communicated to the officers and members of Local Union No. 450 by my duly appointed supervisor. At this hearing these officers and members of Local Union No. 450 and its branches who desire to be heard shall be given a full opportunity to be heard. Following such hearing, the deputy or deputies will report to me the facts they have ascertained, together with such recommendations as they see fit with respect to terminating or continuing supervision over the affairs of Local Union No. 450, its branches, officers and members, with the express understanding that the ultimate decision in this regard shall be made by me. Brother Flowers has been instructed to notify the officers, representatives and members of Local Union No. 450 and its branches of this imposition of supervision and of the time and place of the aforementioned hearing.

Fraternally yours,
Joseph J. Delaney
General President

(Excerpts from Constitution of International)

## ARTICLE V

### Powers and Duties of the General Executive Board

#### Powers.

Section 2. All the powers of the General Convention when in session shall, when the same is not in session, pass to and vest in the General Executive Board, with the exception of such powers as may herein be specifically delegated to the various officers and subdivisions of the International Union. * * *

#### Hearings.

Section 7. The General Executive Board may hold hearings and conduct trials and decide appeals in connection with any matter, complaint, business or case coming before it and the decisions of the General Executive Board thereon, and its findings of facts, shall be final, conclusive and binding. It shall have full power to determine the method of procedure and the times and places for the holding of hearings, trials and appeals. It shall also be empowered to interpret the provisions of this Constitution and decide questions of law arising thereunder.

Article VI covers the powers and duties of the General President as follows:

Section 1. It shall be the duty of the General President to preside at all meetings of the General Convention. * * *

#### To Review Cases and Interpret Laws, Etc.

Section 2. He shall review all cases, complaints and charges filed with the General Executive Board or the General Secretary-Treasurer. He shall be empowered to render decisions on the merits of such cases, complaints and charges and his findings on the facts shall be final and conclusive. He shall also be empowered to interpret the provisions of the Constitution and shall decide questions of law arising thereunder. He shall be vested with all the administrative powers of the organization.

#### To Invoke and Administer International Supervision and Other Peremptory Powers.

Section 3. He shall have power to direct and supervise all Local Unions, Local Officers and any other subdivision of the International Union and members. When-

ever in his opinion the best interests of the organization require it, or Local Unions, Local Officers and any other subdivision of the International Union or members shall be deemed by him to be incompetent, negligent, or to have failed in carrying out their respective duties, or to have violated the Ritual, Obligation, laws, rules or decisions of the organization or its duly constituted authorities, he shall have full power to suspend or remove such individual members, suspend or remove such Local officers, suspend or revoke charters of such Local Unions or place such Local Unions and their officers and members under International supervision. He shall have power to designate and appoint persons to fill the places of those Local Officers or Local Unions suspended, removed or replaced under International supervision, which appointees shall conduct the affairs over which they have been appointed for such time and in such manner as he may direct. All of the business, finances, affairs and government of any Local Union whose charter shall have been suspended by the General President or shall have been placed under International supervision by him, shall be fully and completely conducted and administered by the General President or his deputy thereunto appointed with full power of control therein and thereover. During such suspension or International supervision all rights and powers of the Local Union to conduct its own affairs shall be suspended. He shall countersign all vouchers and checks for payment of monies or for withdrawing funds from the bank. He shall have power to appoint Local Officers pro tem and all committees not otherwise provided for, to deputize any member in good standing to perform any of the powers and duties of his office.

### Vested With All Powers of General Executive Board in Interim, Etc.

Section 9. All powers heretofore vested in the General Executive Board when in session shall, when the same is not in session, pass to and vest in the General President. All of the acts and decisions of the General President shall be reviewable by the General Executive Board and shall continue in full force and effect until revoked by action of the General Executive Board.

## ARTICLE XIV.

Section 8(b). If at any time a Local Union or other subdivision shall withdraw, lapse, dissolve, be suspended, placed under supervision or expelled from the International Union, or shall have its charter revoked, all of its real and personal property, paraphernalia, books, charter, seal, records, card indexes and funds shall immediately revert to the International Union and the General President shall at once, in person or by deputy, take possession of such property, paraphernalia, books, charter, seal, records, card indexes and funds of said Local Union or other subdivision, all of which he or his deputy shall receipt for, and he or his deputy shall forward the same to the General Office or hold as directed.

Section 8(c). The officers and members of said Local Union or other subdivision, individually and collectively, shall be held strictly responsible for all such property, paraphernalia, books, charter, seal, records, card indexes and funds until they are turned over to the General President or his authorized representative and receipted for.

## ARTICLE XVII
### Appeals

### Appeals to General Executive Board

Section 1(a). Any General Officer who shall have filed in a Local Union charges against a member thereof, and any officer or member of a Local Union, may appeal to the General Executive Board from the adoption of any action by said Local Union, or from any decision rendered by the General President. Any Local Union or member thereof which belongs to a local,

State or Provincial Organization or Joint Executive Board may appeal to the General Executive Board from any act or decision of said local, State or Provincial Organization or Joint Executive Board. Notice of such appeal must be in writing and filed with the General Secretary-Treasurer within thirty (30) days from the date of the adoption of said action or the rendition of said decision by the General President. * * *