NAACP OF HOUSTON METROPOLITAN
COUNCIL, Raymond James, and Rev. C.
Anderson Davis, Plaintiffs,

v.

NAACP, Margaret Bush Wilson, and Dr.
W. Montaque Cobb, Defendants.

Civ. A. No. H–77–731.

United States District Court,
S. D. Texas,
Houston Division.

Nov. 3, 1978.

Jack K. Allen and Charles T. Pritchard, Jr., Houston, Tex., for plaintiffs C. Anderson Davis, Houston Metropolitan Branches of the National Ass'n for NAACP and eight Houston Branches.

Gordon R. Cooper, II, Houston, Tex., for NAACP.

## MEMORANDUM OPINION AND FINDINGS OF FACT

COWAN, District Judge.

### Issues

This case, presented to the court in a bench trial on October 19 and 20, 1978, presents essentially two issues:

1. Whether the undisputed facts and applicable law create a situation in which this Court may properly intervene into the internal management of the National Association for the Advancement of Colored People (hereinafter "NAACP")?

2. Whether the pertinent documents create an enforceable contract right in Rev. C. Anderson Davis (hereinafter "Rev. Davis") which can be enforced against the NAACP?

This court, for the reasons explained in detail below, answers both questions: "No."

### Jurisdiction

This court has diversity jurisdiction. There is complete diversity of citizenship between all plaintiffs and all defendants. Assuming, for jurisdictional purposes, the accuracy of the plaintiffs' allegations, more than $10,000 is in controversy.

### Applicable Authorities

This court is in this diversity case governed by the laws of the State of Texas. The applicable rules are explained fully in *International Union of Operating Engineers v. Pierce*, 321 S.W.2d 914 (Civ.App.—Beaumont, 1959); *Guadalupe Valley Electric Co-op v. South Texas Chamber of Commerce*, 374 S.W.2d 329 (Civ.App.—San Antonio, 1963); *Bullard v. Austin Real Estate Board*, 376 S.W.2d 870 (Civ.App.—Austin, 1964); and *American Institute of Real Estate Appraisers v. Hawk*, 436 S.W.2d 359 (Civ.App. —Houston, 1968).

### Essential Facts

In 1974, C. Anderson Davis, a career employee of NAACP, was employed as Executive Secretary of the Houston Metropolitan Council of the NAACP. The extensive record before the court consists of answers to interrogatories, transcripts of meetings and hearings, and two days of testimony. This record reveals that some persons in the Houston community believe that Rev. Davis has performed excellent service for the cause of the NAACP in the Houston area. Some witnesses hold a contrary view. Resolution of the factual dispute as to whether or not Rev. Davis has performed excellently or poorly is not within the realm of this court's function. The court makes no findings of fact relating to this internal dispute.

In the mid-1960's the national leadership of the NAACP determined to experiment with an organizational structure called the "branch" concept, in which several large, metropolitan areas were divided into multiple branches, each of which was issued a charter from the national organization. These branches were organized into a "Metropolitan Council" which also functioned under a constitution approved by the national organization.

The City of Houston at one time had eleven authorized branches, but at all material times, only eight of these were functioning.

In the latter part of 1976, the national leadership of the NAACP became concerned about the branch concept, not only

in Houston but in other cities. In early 1977, the national leadership of the NAACP appointed a committee to study the branch concept in Houston and make a determination as to whether Houston should be reorganized into a smaller number of branches. This committee came to Houston in March of 1977 and conducted two open meetings. The national NAACP encouraged local branch members to attend and express their views at these meetings.

At the first of these March 1977 committee meetings, Rev. Davis and a number of his supporters initially appeared. Rev. Davis inquired who would be allowed to participate in the meetings. Upon being advised that the committee wished to hear the views of any interested member of the NAACP, Rev. Davis and his supporters left the meeting and refused to participate further. Rev. Davis takes the position here (see letter from his counsel dated June 9, 1978) that Rev. Davis refused to attend because the meeting was attended by ". . . a group of outside troublemakers . . . along with some local AF of L— CIO members." There is evidence that Rev. Davis directed communiques to a number of leaders and members in local branches, urging them to boycott the meetings being held by the committee appointed by the national organization to consider reorganization of the Houston branches.

The first of the March meetings was not conducted before a court reporter. The second of the March meetings was reported by a court reporter; the transcript of this meeting appears in the record. From the transcript it would appear that the second meeting, in which Rev. Davis declined to participate, was in fact a serious and studious effort to make a determination concerning how the affairs of the NAACP would be best administered in Houston by a smaller number of branches rather than by the eleven branches which had previously been authorized.

It could be inferred that as a result of Rev. Davis' refusal to participate in the committee meetings and his action in discouraging attendance by branch members, the national leadership determined that Rev. Davis' continued participation as the Executive Secretary of the Metropolitan Council in Houston was not conducive to the long-term aims of the national organization. In June 1977, Rev. Davis received a detailed letter from the national organization accusing him of certain improprieties and advising him that a hearing would be held at which he would be allowed to present evidence concerning his handling of his office and to cross-examine witnesses. Rev. Davis employed counsel, who contested the allegations and requested that any hearing be delayed until after July 1, to accommodate counsel's vacation schedule. In compliance with the request of Rev. Davis' counsel that the hearing be deferred, it was deferred until August.

On August 6 and 7, 1977, a formal hearing was held before a committee appointed by the national board of the NAACP. It is undisputed that Rev. Davis and his counsel had notice of this hearing, and failed to appear. At this hearing, detailed, sworn testimony was presented relating to a number of issues. A factfinder, on the basis of the testimony presented in August, could conclude that Rev. Davis had acted not merely as an Executive Secretary of the Metropolitan Council, but had assumed a very strong and decisive leadership role in the affairs of both the Houston Metropolitan Council and some of its branches. Additional inferences which could legitimately be drawn from the testimony presented at this August hearing are:

1. Rev. Davis had refused to accept membership applications from qualified applicants because Rev. Davis disagreed with the views of the applicants, and believed that the applicants were associated with labor unions.

2. Rev. Davis had manipulated applicants so as to place potential members in branches other than that branch closest to the potential member's home, for the purpose of maintaining as many branches as possible in the Houston area so as to increase

the influence of Houston in the NAACP state convention.

3. The membership of the NAACP and its various branches in Houston had failed to develop properly over the years because of what many regarded as Rev. Davis' dictatorial methods. Some testimony indicated that professional and business leaders of the black community would not submit to or tolerate Davis' alleged dictatorial tactics.

4. The Metropolitan Council under Rev. Davis' leadership had engaged in arguably irregular financial transactions. Testimony established that the Metropolitan Council, without authorization by the national organization, formed a private corporation named "NAACP Educational Service Corporation," which acquired title to a building in which Rev. Davis maintained his residence. This private corporation was given the name of "NAACP Educational Service Corporation" without any authorization by the national board of directors of the NAACP, without the knowledge of that organization, and in violation of the well-established policies and procedures of the national NAACP.

Testimony at the August hearing and at the trial of the matter establish that it is undisputed that Davis and others, without authorization from the national board, used the NAACP name to establish a separate corporation designated the "NAACP Educational Service Corporation," which obtained title to a building with funds which arguably would otherwise have been donated to the NAACP.

5. Financial irregularities had occurred in connection with the handling of various fund raising activities sponsored by the Metropolitan Council (specifically the Freedom Fund Dinner and the Queen's Ball), and in which Davis and his close followers had exercised the responsibility of collecting and accounting for funds.

As indicated above, this court makes no finding and believes it has no reason to or authority to make findings concerning the matters itemized above; but it is clear and the court does hold that the NAACP officials conducting the hearing in August could have found on the basis of the evidence adduced that the itemized facts set forth above were true and that these facts seriously damaged the efforts to achieve the goals of the NAACP in the Houston area. This court has reviewed the transcript of this hearing and, without passing upon the accuracy of the findings, it is apparent that the hearings were detailed, serious, good faith efforts to address real problems and that all interested parties had complete opportunity to be heard.

Although Rev. Davis elected not to participate in the hearing in August, at least one witness appeared and gave testimony strongly favoring Davis' handling of the affairs of the NAACP in Houston. This witness testified that Rev. Davis had been a strong and fearless voice for the black community. No detailed, specific testimony was presented, however, to refute the testimony concerning the specific alleged irregularities set forth above.

In response to testimony adduced at the August hearing, the national NAACP removed Rev. Davis from his position. As a result of the meetings in March and the hearings of August, the board decided to reduce the number of chapters in Houston from eleven to four.

The national board has enacted a resolution removing Rev. Davis from his position as Executive Secretary of the Metropolitan Council. The board has not suspended or revoked the charters of the eleven branches, but has requested that certain of the branches voluntarily surrender their charters. Some of the branches have declined to surrender their charters. Some of the eleven branches are and have at all material times been inactive. The national board has placed the Metropolitan Council and the eleven Houston branches in a "trusteeship" pending completion of the reorganization of the Houston branches.

Plaintiffs here are Rev. Davis, the Houston Metropolitan Council, and eight of the branches. Plaintiffs seek the following relief:

. . . Plaintiffs pray that this Court award their damages as set out above, plus interest as provided by law; that the Plaintiffs be granted a temporary injunction until a trial on the merits and that a permanent injunction then be granted, enjoining the Defendants, their officers, agents and employers from illegally and wrongfully taking control of Plaintiffs, suspending Plaintiff, REV. C. ANDERSON DAVIS, from keeping said Rev. Davis from holding any office for five (5) years in the NAACP, and from wrongfully firing him and from making false statements about Plaintiffs and from trying Plaintiffs in the news media to Plaintiffs' irreparable damage and reinstate Rev. Davis. Plaintiffs further pray that this Court allow them their cost herein, reasonable attorneys fees and that it grant such other and further relief, additional or alternative relief, as may appear to the Court to be equitable and just.

Analysis of Controlling Documents and Facts Relating to Compliance

The parties have introduced in evidence three basic documents entitled: "Constitution of the National Association for the Advancement of Colored People" (which is the basic constitution of the national association and is commonly called the "Blue Book"); "Constitution and Bylaws for Branches of the National Association for the Advancement of Colored People" (which is a form of constitution for a branch and is commonly called the "White Book"); and "Constitution and Bylaws for Metropolitan Councils of the National Association for the Advancement of Colored People" (which is the document governing Metropolitan Councils and is also a form of constitution governing the various metropolitan councils).

There is no conflict between these documents. The controlling language contained in the Constitution of the National Association for the Advancement of Colored People is:

The management and government of the affairs of the Association shall be vested in the Board of Directors which shall have full power and authority to:

(a) establish major administrative and other policies governing the affairs of the Association. . . . (d) acquire, own, deal with, invest and dispose of property, both real and personal, stock certificates and securities. . . . (e) create an Executive Committee consisting of fifteen members appointed by the Chairman of the Board. . . . (g) create such standing or special committees in addition to those prescribed herein as it considers advisable to carry out any purposes connected with the work of the Association. . . . (h) create from time to time such regional divisions . . . as it may deem advisable to carry out the projects for which the Association was created. . . . (i) establish branches, . . . in such places and under such conditions as it sees fit. Each of the above shall be administered under a charter granted to it by the Board of Directors and in accordance with the Constitution and Bylaws authorized by said Board of Directors.

The key language contained in the "Constitution and Bylaws for Branches" is:

The _____ Branch shall be a constituent and *subordinate* unit of the Association, subject to the general authority and jurisdiction of the Board of Directors of the Association.

The key language contained in the "Constitution and Bylaws for Metropolitan Councils" is:

The Council shall be a constituent and *subordinate division* of the Association, subject to the general authority of the national Board of Directors.

The Constitution of the National Association for the Advancement of Colored People, i. e., the constitution of the national organization, provides that each branch shall be administered under a charter granted by the board of directors. There is

no evidence that the charter grants any rights in perpetuity or abrogates in any degree the apparent authority of the board to withdraw or cancel a charter at any time in its discretion by following the procedure prescribed in Article VI of the "Constitution and Bylaws for Branches of the National Association for the Advancement of Colored People."

Analysis of the documents discussed under this heading reveals that the national leadership of the NAACP, acting through its board and its executive committee, had authority to appoint a committee to investigate the situation in Houston, conduct hearings and to recommend action to the board.

It is also clear from an analysis of the documentation in question that any local branch of the NAACP, or any Metropolitan Council, is, in fact, a "constituent and subordinate unit" and may be dissolved by action of the board of the NAACP by following the procedures described in Article XI of the Constitution and Bylaws for Branches of the National Association for the Advancement of Colored People.

The procedure for disciplinary action against an officer or member is prescribed in Article X of the Constitution and Bylaws for Branches of the National Association for the Advancement of Colored People which, in its pertinent parts, states:

. . . The National Board of Directors upon satisfactory evidence that an officer or member of the Association or of a subsidiary unit of the Association is guilty of conduct not in accord with the principles, aims and purposes of the National Association for the Advancement of Colored People, as set out in this Constitution and By-laws for Branches, . . or is guilty of conduct inimical to the best interests of the National Association for the Advancement of Colored People, may order suspension, expulsion or other disciplinary action against such officer or member, after full hearing in accord with the provisions of this Constitution.

. . . . A complaint against such officer or member under Section 2 hereof may be initiated by any three members of the National Association for the Advancement of Colored People and must be signed by such members and forwarded to the National Office.

. . . Where the Executive Director is satisfied that there is danger of irreparable harm to the Association or Branch involved and that immediate action is necessary, he may order the officer or member suspended pending a full hearing.

. . . Upon receipt of complaint or charges, the National Office shall forward copies of same by registered mail to the officer or member involved at his last address on file in the National Office. Such officer or member shall have fifteen (15) days from date or receipt of charges to file with the National Office his answer in writing to said charges. The 15-day period shall commence to run from time a copy of the charges should have reached said officer or member by ordinary post.

. . . The National Board reserves the right to hear and act upon the charges, and the officer or member is entitled to a hearing before the Board of Directors, if he so desires, or he may elect to have the matter decided by the Board ex parte on the basis of the complaint and answer and affidavits. Whether an oral hearing is requested or an ex parte hearing takes place, such hearing shall be conducted by the Committee on Branches, unless a special committee is designated by the Board. The General Counsel shall act as counsel for the Board Committee, and the member or officer may be represented by counsel and present oral or documentary evidence in his behalf relevant to the charges made.

. . . Notice of the findings and action of the Board shall be sent to the officer by registered mail at his last address on file in the National Office and, in the discretion of the Board of Directors, published in the official organ of the National Association.

The procedures set forth above were followed here scrupulously with one exception.

The "complaint" against Rev. Davis was not signed by three members, but was signed by the Chairman of the Board, Margaret Bush Wilson. The complaint was, however, initiated by far more than three members. More than three members had appeared at the March meetings and complained about Rev. Davis. In addition, this procedural irregularity, if it may properly be so deemed, was waived by Rev. Davis' failure to appear at the August meeting of which he had full notice. In addition, it would be a vain, useless and futile action for the court to compel the NAACP to repeat its hearing procedure because of this minor, immaterial procedural variation.

Article XI of the Constitution and Bylaws for Branches of the NAACP prescribes the procedure to be followed in connection with Suspension and Revocation of Charters. This provision is here immaterial because there is no evidence that the charters of any branches have been suspended or revoked. While the Constitution for the National Association for the Advancement of Colored People does not specifically give the Board the power to place branches in trusteeship, that power is, in this court's opinion, clearly vested in the board by the broad supervisory powers granted by Articles V and IX setting forth the powers of the Board and the national association's officers.

Elemental Due Process

NAACP is not a governmental entity. On the contrary, it is a private corporation organized under the laws of the State of New York. This court, therefore, has limited authority to make a determination as to whether or not the procedures followed in this case meet the requirements of elemental due process; however, in determining the appropriateness of the equitable relief sought by plaintiffs, the court may, in balancing the equities, determine if it appears to this court clearly, as a matter of law, that the procedures followed here did meet the requirements of elemental due process.

■ Rev. Davis was given full and complete notice of the matters which concerned the national leadership, was given an opportunity to employ counsel, to present evidence, to cross-examine witnesses, and assert arguments. He refused to attend the meetings in March and the hearings in August, despite the fact that he was given adequate opportunity to appear, present evidence, cross-examine witnesses and make arguments. The fact that "charges" against Rev. Davis had been instituted by the same body which appointed a committee to investigate and hear such charges would not be a denial of due process even if the NAACP were a governmental entity. See *Horowitz v. Board of Curators*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1977).

■ The Metropolitan Council and the branches also had notice of the public meetings and hearings scheduled for March and August, had a complete opportunity to appear and present their views to an impartial tribunal and were thus afforded elemental due process.

Do the Pertinent Documents Create a Contractual Right in Rev. Davis or the Other Plaintiffs?

The pertinent documents clearly create no absolute contractual right in the Metropolitan Council, or any of the local branches, to retain their charters. These charters were granted by the national board, and there is no constitutional provision which would prevent these charters being withdrawn.

Rev. Davis signed a document in November of 1974 entitled "NAACP of Houston Metropolitan Council Executive Director's (or Executive Secretary) Contract." This contract sets Rev. Davis' compensation for the 12-month period commencing in November 1974, and provides that " . . . the time of employment shall be indefinite and this contract shall remain in vouge (sic) indefinitely. If for any reason the Metropolitan Council shall, structurally, be changed, this contract shall apply toward every structural organizational form that may be established under the National Association for the Advancement of Colored People." At trial, Rev. Davis testified that

this contractual provision meant that Rev. Davis would serve so long as both parties were satisfied.

The evidence establishes that the national board approved Rev. Davis' employment as Executive Secretary of the Houston Metropolitan Council. The board did not approve this specific form of contract. There is nothing in the documentation creating the Metropolitan Council which gives it the authority to bind any successor Metropolitan Council. In addition, Article III(c) of the Constitution and Bylaws for Metropolitan Councils for the NAACP clearly provides that the Executive Secretary's employment shall rest " . . . upon the approval of the national board of directors."

█ There was no evidence presented that when the national board of directors approved the employment of C. Anderson Davis, it stipulated that the employment would be for any particular time and there is no evidence that the national board in any way waived the provision contained in Article III(c) of the Constitution and By-laws for Metropolitan Councils of the NAACP, where such constitution provides:

(c) Executive Secretaries shall be salaried officers and may be employed by the Council, or *assigned by the National Office,* where budgets warrant such employment *and upon the approval of the National Board of Directors.*

Substantial, Good Faith Compliance with Procedures Promulgated by the Constitutional Documents of NAACP

The Court has concluded that the NAACP has substantially complied with the procedures provided in its constitutional documents.

On April 18, 1977, at a regular meeting of the board of directors of the NAACP, the board, by appropriate action, appointed a committee to study the multiple branch structure throughout the association. This committee was directed to make a report of its findings and recommendations not later than the September 1977 meeting of the committee on branches. This committee held open meetings in Houston to study the multiple branch situation in Houston, Texas, on March 7, and March 21, 1977. Rev. Davis and the Houston Metropolitan Council, acting by a resolution passed by its members, refused to participate in these meetings.

On June 10, 1977, the Executive Committee of the NAACP national board of directors passed a motion placing Rev. Davis on administrative leave, effective June 10, 1977. Contemporaneously, by letter dated June 8, 1977, Margaret Bush Wilson, chairman of the national board of directors of NAACP, forwarded a letter to Rev. Davis advising him of seven specific actions which appear to represent conduct inimical to the best interest of the association.

The action placing Rev. Davis on administrative leave was authorized by Article X, Section 4 of the Constitution and Bylaws for Branches of the National Association for the Advancement of Colored People (commonly called the "white book").

Mrs. Wilson's letter of June 8 was answered by counsel for Rev. Davis in a detailed letter of June 16, 1977 in which the allegations of fact contained in Mrs. Wilson's letter of June 8 were denied. Significantly, counsel's letter of June 16, 1977 did not request a hearing, but merely stated: "If you feel that Rev. Davis must appear before your national board to answer the charges made against him, I respectfully request that the same be set for a date after July 1, 1977, as I will be on vacation until that date."

The significant facts are that all of the actions taken with reference to C. Anderson Davis, the Houston Metropolitan Council, and eight plaintiff branches were taken with the full knowledge and authorization of the national board of directors of NAACP and its executive committee. In addition, plaintiffs were given full and adequate notice of all proposed actions, full and adequate opportunity to appear and present their positions, full opportunity to appear both at the open meetings in March and the hearings in August to present their position. Plaintiffs elected not to attend these

meetings and thus have no equitable standing to complain of any minor procedural irregularities which may have existed.

This court has reviewed the documents governing the NAACP, the Metropolitan Council in question, and the various branches, and has not been able to perceive any material procedural irregularity. In addition, the failure of Rev. Davis and the other plaintiffs to attend the meetings and hearings of March and August make it unrealistic for the plaintiffs to here demand equitable relief.

■ Under the applicable authorities, this court does have the power to determine if the NAACP and its board and officers have here acted in good faith and in substantial compliance with their own rules. This court finds, as a matter of law, that defendants have acted in good faith and in substantial compliance with their own rules.

■ The court also finds, as a matter of law, that the failure and refusal of the plaintiffs to participate in the meetings of March and August estop the plaintiffs from complaining of any substantive or procedural irregularities in the procedures followed by defendants.

## Claims for Damages

Rev. Davis is entitled to damages only if he has established a breach of or wrongful interference with a contractual right. He has not, in the court's opinion, as a matter of law, established such a right and is entitled to no damages.

The other plaintiffs have not, as a matter of law, established that there has been any breach of contract and have introduced no evidence that they have sustained monetary damage.

## Procedural Posture of the Case

The undersigned was assigned this case after preliminary proceedings before another judge of this court. Shortly after the undersigned received this case, the court held several pretrial and discovery conferences with counsel in chambers. Counsel for both parties advised the court that only matters of law were involved in the resolution of this matter and that it would not be necessary for the court or a jury to decide contested issues of material fact as to the issues of liability. The issues of liability were severed from issues relating to damages.

Thereafter, counsel for plaintiffs addressed a letter dated June 16, 1978 to the court stating in substance that the parties did not agree upon all the facts and that counsel was puzzled as to how the question of law could be presented. The court replied in a letter dated June 22, that in many contract disputes the parties did not agree upon all the facts but that if the material facts were undisputed, the matter could be resolved as a matter of law. The undersigned, in the court's letter of June 22, assured counsel for plaintiffs that if there were disputed issues relating to *material* facts, the court would afford the parties a jury trial as to any material disputed facts.

■ With this background, this matter came on for hearing on October 19. The parties presented two days of testimony and introduced a large quantity of deposition and documentary proof itemized above on page 2. After a thorough review of this material, it is apparent that the parties have great and irreconcilable differences of view concerning the wisdom of reorganizing the Houston branches and the validity of the charges against Rev. Davis. These matters, however, are internal management problems of the NAACP in which this court, under the law and the undisputed material facts, has no right to intervene.

At the conclusion of the evidentiary hearing on October 19 and October 20, both parties moved for judgment, contending on the record that the movant was entitled to judgment as a matter of law.

Plaintiffs also seek equitable relief. The claims for equitable relief are addressed solely to the court and no jury issues are involved. The court has determined that plaintiffs are entitled to no equitable relief.

The Court has determined that plaintiffs' motion should be DENIED, and defendants'

motion should be GRANTED. Accordingly, the court is dismissing plaintiff's cause with prejudice in a final judgment of even date herewith.